## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF PENNSYLVANIA

------------------------------------------------------ x
                              :

**CHARLES GILLETTE,**           :

                           : **Civil Action No.**   2:21-cv-1044

        *Plaintiff,*        :

                           :

         v,              : **COMPLAINT**

                           :

**SAM'S CLUB**             :

                           : **Jury Trial Demanded**

       *Defendant.*      :

                           : **Electronically Filed**

                           :

------------------------------------------------------ X

## COMPLAINT
## Nature of the Action, Jurisdiction, and Venue

1.    This is an individual action under the Age Discrimination in Employment Act of 1967, as amended (ADEA)(29 U.S.C. §621 et seq.), the Pennsylvania Human Relations Act, 43 P.S. §955(d), and Pennsylvania common law for a violation of public policy.

2.    Jurisdiction of this court is invoked under 28 U.S.C. § 1331 and, for the supplemental state claims, 28 U.S.C. § 1367(a).

3.    The actions and policies alleged to be unlawful were committed in whole or in part around Washington, PA, where Plaintiff worked for Defendant. This action is within the jurisdiction of, and venue is proper in, the United States District Court for the Western District of Pennsylvania.

4.    Plaintiff exhausted his administrative remedies by filing a charge of age discrimination with the Equal Employment Opportunity Commission (EEOC) and the Pennsylvania Human Relations Commission (PHRC) within the respective statutory periods (300 days/180 days) following the complained-of acts. Plaintiff is filing this Complaint more than 60 days after filing the charges of age discrimination with the EEOC.

## Parties

5.      **Plaintiff Charles Gillette** resides at 80 Moger Drive, Washington, PA 15301. Plaintiff was employed by Defendant Sam's Club from in or about November 19, 2020, until on or about December 19, 2020.

6.      Plaintiff reported to Defendant's Washington, PA, store.

7.      Plaintiff performed work within the state of Pennsylvania.

8.      **Defendant Sam's Club** is an American chain of membership-only retail warehouse clubs owned and operated by Walmart Inc. Defendant maintains its headquarters at 2101 SE Simple Savings Dr, Bentonville, AR 72716.

9.      Plaintiff is an employee of Defendant within the meaning of the ADEA, PHRA and Pennsylvania common law.

10.     At all relevant times Defendant has been an enterprise engaged in interstate commerce with annual revenues in excess of $500,000.

11.     Defendant has regularly employed Plaintiff in the state of Pennsylvania in the performance of work on behalf of Defendant and is subject to the provisions of the PMWA and Pennsylvania common law.

## Statement of Claims

12.     Defendant employed Plaintiff from on or about November 19, 2020, until on or about December 19, 2020.

13.     Plaintiff was born in 1964 ( age at time of events was 56 ).

14.     Plaintiff held the position of Asset Protection Associate.

15.     The chain of command at the Washington, PA, store was that Plaintiff reported to a Compliance Manager who then reported to the Store Manager.

16.     The Compliance Manager is approximately 30 years old.

17.     During his employment Plaintiff was subjected to demeaning, threatening behaviors from his immediate manager ( the Compliance Manager ).

18.     These behaviors included asking Plaintiff whether he was a retiree.

19.     On another occasion during instruction on a work situation the Compliance Manager lunged at Plaintiff from a seated position and yelled at Plaintiff to keep his face mask on his face when Plaintiff was simply adjusting his face mask.

20.     On another occasion the Compliance Manager attempted to brush something off Plaintiff's shirt without Plaintiff's permission.

21.     On another occasion the Compliance Manager grabbed papers out of Plaintiff's hands and threw the paperwork on a desk.

22.     The Compliance Manager did not display this kind of behavior to the younger associates in the store.

23.     On Plaintiff's last day of employment (December 19, 2020) Plaintiff asked to speak with the Store Manager about the Compliance Manager's behaviors.

24.     Instead of allowing Plaintiff to speak with the Store Manager the Compliance Manager ordered Plaintiff to come to a private office area on the second floor of the facility to speak with the Compliance Manager instead.

25.     Plaintiff met with the Compliance Manager in the upstairs area and told the Compliance Manager he objected to the way the Compliance Manager had been treating him, including the incidents mentioned above.

26.     Of significance, several days before the discussion with the Compliance Manager Plaintiff had filed a written report ( an email ) with the Store Manager alerting the Store Manager to the fact the Compliance Manager had falsified government-mandated safety

reports in the store.

27.   Specifically, Plaintiff observed the Compliance Manager backdating daily reports regarding the safety of the steel shelves throughout the store.

28.   Sam's Club utilizes steel shelving throughout the store, most of the shelves going from the floor to the ceiling.

29.   This means most of the shelving extends upwards of 40 feet from the floor.

30.   The shelves in turn are stocked with all the goods in the store.

31.   There is no back room in the traditional sense at the store: rather, the goods are taken right from the delivery trucks and placed on the steel shelves.

32.   The Occupational Health and Safety Administration (OSHA) requires daily safety inspections of the shelves to assure their integrity, and completion of an OSHA form each day to confirm the inspections have been completed.

33.   The Commonwealth of Pennsylvania has legislatively adopted these OSHA standards for private employers such as Defendant.

34.   In fact, Sam's Club has experienced failures of the steel shelves at other stores in the past.

35.   Failure to inspect the steel shelves in accordance with the OSHA requirement creates a safety hazard to the store employees and customers.

36.   Sam's Club has its own policy to assure compliance with the OSHA inspection requirement as well:  a daily inspection and a daily report reflecting the inspection has been performed must be completed each day.

37.   Notwithstanding the OSHA requirement, and corresponding Sam's Club policy, the Compliance Manager, who had primary responsibility in the store for performing and recording the inspections, was backdating the inspection reports to make it appear the

inspections and reports had been completed timely.

38.     Plaintiff told the Store Manager in the email that the Compliance Manager was not doing the required reports and asked the Store Manager how to handle this.

39.     Plaintiff made the report approximately one week before he was terminated.

40.     The only response Plaintiff got from management in response to his report was that he should never put something like that in writing again.

41.     Plaintiff was told this about 4 or 5 days before he was terminated.

42.     On the day he was terminated (December 19, 2020) it was within about ten minutes of meeting with the Compliance Manager and complaining to the Compliance Manager about the various behaviors the Compliance Manager had displayed toward Plaintiff that Plaintiff was terminated.

43.     Plaintiff was told by the Compliance Manager when he was being terminated that Plaintiff "was not a fit for the job."

44.     Plaintiff believes and avers that he was treated differently, and adversely, as compared with considerably younger employees because of his age (56).

45.     Plaintiff believes and avers that the real reason he was terminated was because of his age, and that the reason given to him for the termination ("was not a fit for the job") was a pretext for age discrimination.

46.     Plaintiff performed his job satisfactorily and in accordance with the directions of the management chain.

47.     Plaintiff believes and avers that younger employees who have performed less satisfactorily have been treated more favorably by not being screamed at, threatened or terminated.

48.     Plaintiff also believes and avers that he was terminated in whole or in part for his having opposed and complained about an unsafe, illegal practice by management:   failing to perform safety inspections of steel shelves and falsifying steel shelve safety reports.

49.     By terminating Plaintiff's employment for exercising his rights to oppose and complain about safety hazards and the illegal activity of Defendant regarding those safety hazards Defendant committed the tortious act of wrongful discharge in violation of public policy.

50.     Plaintiff was discriminated against because of his age, in violation of the ADEA and PHRA.

51.     Plaintiff was also treated adversely (  terminated ) in violation of public policy.

## COUNT I: AGE DISCRIMINATION (ADEA/PHRA)

52.     Plaintiff incorporates by reference paragraphs 1 through 50 of this complaint as though the same were more fully set forth herein.

53.     Plaintiff is in a protected group (over the age of 40).

54.     Plaintiff is qualified for the position in question (Asset Protection Associate).

55.     Plaintiff suffered an adverse action: adverse treatment and termination.

56.     Substantially younger workers were treated more favorably than Plaintiff in similar circumstances.

57.     Defendant's motive in treating Plaintiff adversely compared to the younger workers and terminating Plaintiff was Plaintiff's age and a preference for younger workers.

58.     Defendant actions were in violation of the law (ADEA and PHRA).

59.     Plaintiff has suffered loss of job, loss of future earnings, loss of opportunity and loss of

benefits as a result of the unlawful actions by Defendant.

60.     Plaintiff is seeking lost wages, liquidated damages (ADEA), lost benefits (including retirement and health benefits), compensatory damages (PHRA), attorney's fees and costs.

### COUNT II: WRONGFUL DISCHARGE IN VIOLATION OF PUBLIC POLICY

61.     Plaintiff incorporates by reference paragraphs 1 through 59 of this complaint as though the same were more fully set forth herein.

62.     Plaintiff engaged in a protected act:   opposing and complaining about Defendant's violation of federal safety regulations.

63.     These safety regulations reflect a parallel public policy of the Commonwealth of PA to protect employees and the public from unreasonable safety threats.

64.     Plaintiff suffered an adverse action (terminated) within a matter of days after engaging in the protected act.

65.     Defendant terminated Plaintiff in retaliation for Plaintiff having engaged in the protected act.

66.     The termination violates PA public policy.

67.     As a direct and proximate result of Defendant's violation of PA public policy Plaintiff has suffered and will continue to suffer loss of employment, loss of income, and loss of future income.

68.     Plaintiff has suffered and will continue to suffer mental anguish, emotional distress, loss of self-esteem, embarrassment and humiliation for which he is entitled to be compensated

in damages.

69.     The conduct engaged in by Defendant constituted extreme and outrageous conduct, justifying an award of punitive damages against Defendant to punish Defendant and to deter similar conduct on its part and the part of others in the future.

70.     Plaintiff seeks to recover an amount equal to his lost wages, lost benefits, punitive damages, compensatory damages, plus reasonable attorneys' fees, litigation costs, and interest.

## PRAYER FOR RELIEF

71.     WHEREFORE, Plaintiff respectfully request that this Court:

A.  order Defendant to pay lost wages, liquidated damages (under the ADEA), compensatory damages (under the ADEA for denial of benefits and under the PHRA), attorneys' fees and costs, post-judgment interest; and, grant such further relief as the Court deems necessary and proper;

B.  order Defendant to pay wages and benefits lost due to his unlawful termination;

C.  order Defendant to pay compensatory damages in an amount equal to other losses incurred as a result of his discriminatory termination, and in an amount sufficient to compensate him for pain and suffering and emotional distress;

D.  order Defendant to pay punitive damages;

E.  order Defendant to pay interest, reasonable attorneys' fees, and costs; and,

F.  award such other relief as justice requires.


Respectfully submitted,

 s/Joseph H. Chivers
Joseph H. Chivers, Esq.
PA ID No. 39184

The Employment Rights Group, LLC
100 First Avenue, Suite 650
Pittsburgh, PA  15222-1514
jchivers@employmentrightsgroup.com
Tel: (412) 227-0763/Fax: (412) 774-1994

*Counsel for Plaintiff*
*Charles Gillette*

Dated: <u>August 5, 2021</u>